UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BRIAN WEISS,                        )
                                    )
    Petitioner,                     )
                                    )
vs.                                 )        Case No. 4:04-CV-398 JCH
                                    )
DON ROPER,                          )
                                    )
    Respondent.                     )

## MEMORANDUM AND ORDER

This matter is before the Court on Missouri state prisoner Brian Weiss' pro se petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1). The matter is fully briefed and ready for disposition.

On August 24, 2000, a jury in the Circuit Court of the City of St. Louis, Missouri found Petitioner guilty of one count of manslaughter, two counts of armed criminal action, and one count of first degree assault. (Petition, Doc. No. 1). The trial court sentenced him to consecutive sentences of twenty years imprisonment for manslaughter, thirty years imprisonment for each count of armed criminal action, and thirty years imprisonment for first degree assault. (Id.). On August 28, 2001, the Missouri Court of Appeals affirmed the conviction. (State's Exhibits, Doc. No. 11 at Ex. E). Petitioner filed a Rule 29.15 Motion for post-conviction relief in the Circuit Court for the City of St. Louis, Missouri and it was denied on October 7, 2002. (Id. at Ex. F). On September 23, 2003, the Missouri Court of Appeals affirmed the Rule 29.15 motion court's judgment. (Id. at Ex. I).

In his § 2254 petition, filed April 1, 2004 and amended on June 21, 2004, Petitioner raises the following nine grounds for relief:

1

1. The trial court erred by refusing to allow a self-defense instruction regarding the shooting of Steven Hosick;

2. The trial court erred by refusing to allow a self-defense instruction regarding the shooting of Randy Cooper;

3. Trial counsel was ineffective because he failed to ask or to move for a change of judge on the grounds that the judge was allegedly biased;

4. Trial counsel was ineffective and Petitioner was denied due process because statements made to transporting officers were admitted as evidence;

5. Trail counsel was ineffective and Petitioner was denied due process when the prosecutor allegedly made false statements to the jury in his opening argument;

6. Trial counsel was ineffective because he had a "strong lack of professionally interest" in his case;

7. The trial court erred by failing to appoint him new counsel;

8. Trial counsel was ineffective and Petitioner was denied due process when trial counsel failed to object and to preserve for appellate review the trial judge "shaking his head in the motion of YES" during the prosecutor's closing argument;

9. The trial court erred in admitting evidence of Petitioner's attempted escape from police custody.

(Petition, Doc. No.1, Am. Petition, Doc. No. 8). Respondent filed his Response on July 8, 2004. (Doc. No. 10). Petitioner filed his Traverse on October 28, 2004. (Doc. No. 13).

## DISCUSSION

A state prisoner may petition for a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state prisoner is entitled "'to relief on federal habeas corpus only upon proving that [his] detention violates . . . fundamental liberties . . . safeguarded against state action by the Federal Constitution.'" Wessling v. Bennett, 410 F.2d 205, 209 (8th Cir. 1969), quoting Townsend v. Sain, 372 U.S. 293, 312 (1963). "'[I]t is not the province of a federal habeas court to re-examine state-court determinations [of] state-law questions.'" Gee v. Groose, 110 F.3d 1346, 1349 (8th Cir. 1997),

2

quoting Estelle v. McGuire, 502 U.S. 62, 67-68 (1991). Rather, a federal court is limited "'to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.'" Id.

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), P.L. 104-132, 110 Stat. 1214, made numerous changes to Title 28, Chapter 153 of the United States Code, 28 U.S.C. §§ 2241-2255, the chapter governing federal habeas petitions. Specifically, in Section 104 of the AEDPA, Congress added new subsection (d) to 28 U.S.C. § 2254. That subsection provides as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause of § 2254(d)(1), a petitioner may prevail if the state court's decision is opposite to that reached by the United States Supreme Court on a question of law or if a state court decides a case differently than the United States Supreme Court despite confronting indistinguishable facts. See Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000), citing Williams v. Taylor, 529 U.S. 362 (2000) (holding that the "contrary to" clause refers to the Supreme Court's holdings and not its dicta); see also Ramdass v. Angelone, 530 U.S. 156 (2000).

Under the "unreasonable application" clause of § 2254(d)(1), a writ may issue only if the state court identifies that correct governing legal principle from the United State Supreme Court's decisions but unreasonably applies the principle to the facts of the petitioner's case. See Williams,

3

529 U.S. at 412. Under this clause, a federal habeas court should ask "whether the state court's application of clearly established federal law [as determined by the United States Supreme Court] was objectively unreasonable." Id. at 1521. It is not enough for the federal habeas court to conclude in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable. Id. at 1522.

## Exhaustion

A petitioner must exhaust his state law remedies before the federal court can address the merits of his claims in a habeas petition. 28 U.S.C. §2254(b). The Court must first look to see whether the federal constitutional dimensions of the petitioner's claims have been fairly presented to the state court. Smittie v. Lockhart, 843 F.2d 295, 296 (8th Cir. 1988). If not, the petitioner may still meet the exhaustion requirement if there are no currently available non-futile state remedies by which he could present his claims to the state court. Id. When the petitioner's claims are deemed exhausted because he has no available state court remedy, the federal court still cannot reach the merits of the claims unless the petitioner demonstrates adequate cause to excuse his state court default and actual prejudice resulting from the default. Wainwright v. Sykes, 433 U.S. 72, 87 (1977); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir.), cert. denied, 515 U.S. 1163 (1995); Stokes v. Armontrout, 893 F.2d 152, 155 (8th Cir. 1989). Every habeas ground advanced by the petitioner must survive this exhaustion analysis, or the petition must be dismissed. Rose v. Lundy, 455 U.S. 509 (1982).

In **Ground 4**, Petitioner alleged that the trial court improperly admitted statements taken by the transporting officer. (Am. Petition, Doc. No. 8). In **Ground 5**, Petitioner alleges prosecutorial misconduct occurred. (Id.). In **Ground 6**, and **Ground 8**, Petitioner alleges that he received ineffective assistance of counsel because his trial attorney was uninterested and he failed to object

4

when the judge shook his head during closing arguments. (Id.). In **Ground 7**, Petitioner alleges the trial court erred in refusing to appoint new counsel. (Id.). Finally, in **Ground 9**, Petitioner alleges that the trial court erred in admitting evidence of his attempted escape from police custody. (Id.). Petitioner failed to raise any of these claims in his appeal from the Rule 29.15 motion court's judgment. (State's Exhibits, Doc. No. 11 at Ex. G).

A claim must be presented at each step of the judicial process in state court to avoid procedural default. Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994) (citation omitted); State v. Sumowski, 784 S.W.2d 643, 647 (Mo. 1990) (stating rule regarding exhaustion of constitutional claims in Missouri courts). Because Petitioner has failed properly to raise these claims in state court proceedings, the claims are defaulted and he is procedurally barred from pursuing them here. Coleman v. Thompson, 501 U.S. 722, 731-32 (1991); Forest v. Delo, 52 F.3d 716, 719 (8th Cir. 1995); Keithley v. Hopkins, 43 F.3d 1216, 1217 (8th Cir. 1995). This Court therefore cannot reach the merits of the claims absent a showing of cause and prejudice, or a demonstration "that failure to consider the claim[] will result in a fundamental miscarriage of justice." Coleman, 501 U.S. at 750. Petitioner has made no showing of cause and has not demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. Grounds 4, 5, 6, 7, 8, and 9 are therefore procedurally barred and will be denied.

## Claims Addressed on the Merits

Grounds 1-2

Ground 1 alleges that the trial court improperly refused to instruct the jury on self-defense in the shooting of Steven Hosick. Ground 2 alleges that the trial court improperly refused to instruct the jury on self-defense in the shooting of Randy Cooper. The Petitioner raised this claim on direct appeal, and the Missouri Court of Appeals held:

Defendant raises two points on appeal. In his first point, Defendant argues that the trial court erred in refusing to instruct the jury on self-defense because the evidence presented by Defendant provided a basis from which a jury might reasonably have concluded that Defendant's actions which resulted in Hosick's death were taken in self-defense. To support this argument, Defendant cites his statement that Hosick drew the gun and that Hosick was shot in the scuffle resulting once the gun was drawn.

A trial court must submit a self-defense instruction where such defense is supported by the evidence when viewed in a light most favorable to the defendant. State v. Crawford, 904 S.W.2d 402, 405 (Mo.App. E.D. 1995). Self-defense arises from an intentional, voluntary act of the defendant. See State v. Hopson, 891 S.W.2d 851, 853 (Mo.App. E.D. 1995).

Viewing the evidence in the light most favorable to Defendant, we find the evidence did not support the submission of a self-defense instruction as to Hosick. In its ruling on Defendant's proffered self-defense instruction, the trial court stated that it "does not believe there was any evidence that the defendant killed Steven Hosick in self-defense.... [T]he defendant testified that he killed Mr. Hosick by accident...." We agree with the trial court.

Defendant testified to the following. As he tried to pull the gun away from Hosick's hands, "the gun went off." Defendant "was there ... pulled the gun from [Hosick], the gun went off." At the moment the gun went off, Defendant was "trying to get away from [Hosick]" by stepping back. Hosick was shot "during the course of the struggle" while Defendant had possession of the gun. Defendant did not intend to shoot anybody. Hosick's death "was not an intentional killing." Defendant was not sure if his finger ever went around the trigger. When Hosick was shot, Defendant was not trying to injure him or kill him, but rather he was "just trying to take the gun away." The inference, favorable to Defendant, to be drawn from this evidence is that the struggle between Defendant and Hosick, not a conscious decision by Defendant, caused the gun to discharge. See State v. Stubenrouch, 591 S.W.2d 42, 45 (Mo.App. E.D. 1979). This evidence does not indicate that Defendant intended to act in self-defense, and therefore he was not entitled to a self-defense instruction.

Further, the submission of what is commonly understood to be the defense of accident, i.e., "I didn't mean to do it" or "the gun accidentally went off" is accomplished by the submission of a converse instruction that converses the mental element contained in the verdict director. MAI-CR 3d 304.11 D. As to Count I, instructions for second-degree murder and voluntary manslaughter were given to the jury. Defendant submitted, and the trial court gave, a converse instruction based on MAI-CR 3d 308.02 for each of these instructions. Thus, the jury was properly instructed.

Accordingly, the trial court did not err in refusing to instruct the jury on self-defense as to Hosick. Defendant's point one on appeal is denied.

In his second point on appeal, Defendant argues that the trial court erred in refusing to instruct the jury on self-defense because the evidence presented by Defendant provided a basis from which a jury might reasonably have concluded that Defendant's actions which resulted in Cooper's injury were taken in self-defense. To support his argument, Defendant cites his statement that Cooper first grabbed

Defendant, tried to take the gun from him, and caused Defendant to squeeze the gun in an attempt to keep it from Cooper, causing the gun to fire.

Viewing the evidence in the light most favorable to Defendant, we find the evidence does not support the submission of a self-defense instruction as to Cooper. In its ruling on Defendant's proffered self-defense instruction, the trial court stated that "there's no evidence that [Defendant] shot Mr. Cooper in self-defense. In other words, there's no evidence that he intentionally shot Mr. Cooper to protect himself." Again, we agree with the trial court.

Defendant testified to the following. While Defendant was holding the gun, Cooper approached Defendant. Defendant did not "see anything that would make [him] feel that [Cooper] could cause [him] death or serious bodily injury." During his struggle with Cooper, as they were falling down, "the gun went off." Defendant was squeezing the gun "to keep ahold of it because [he] didn't want [Cooper] to get the gun." Defendant "did not shoot [Cooper]," did not "intentionally shoot him." When Cooper was shot, Defendant was not trying to injure him or kill him, but rather he was "trying to defend [himself]." The inference, favorable to Defendant, to be drawn from this evidence is that the struggle between Defendant and Cooper, not a conscious decision by Defendant, caused the gun to discharge. See Stubenrouch, 591 S.W.2d at 45. This evidence does not indicate that Defendant intended to act in self-defense, and therefore he was not entitled to a self-defense instruction.

Further the submission of what is commonly understood to be the defense of accident, i.e., "I didn't mean to do it" or "the gun accidentally went off," is accomplished by the submission of a converse instruction that converses the mental element contained in the verdict director. MAI-CR 3d 304.11 D. As to Count III, an instruction for first-degree assault was given to the jury. Defendant submitted, and the trial court gave, a converse instruction based on MAI-CR 3d 308.02 for this instruction. Thus, the jury was properly instructed.

(State's Exhibits, Doc. No. 11, Ex. E at pgs. 3-6).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C. §2254 states in relevant part as follows:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254. The Eighth Circuit holds that because jury instructions involve questions of state law, Petitioner must show that "the instructions used constituted a fundamental defect that resulted in a miscarriage of justice." Robinson v. LaFleur, 225 F.3d 950, 954 (8th Cir. 2000) (examining self-defense instructions in context of habeas), citing Louisell v. Dir. of Iowa Dep't of Corr., 178 F.3d 1019, 1022 (8th Cir. 1999).

Upon review, the Court finds that the Missouri Court of Appeals' opinion did not result in a decision contrary to clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence presented. The Court does not see any indicia of a fundamental defect resulting in a miscarriage of justice. Accordingly, Grounds 1 and 2 will be denied.

Ground 3

In Ground 3, Petitioner alleges that he received ineffective assistance of counsel because his trial attorney failed to move for a new judge. Petitioner alleges that the judge, who is Jewish, was biased towards him because of his religious affiliation and because he speculated in his chambers during a discussion with trial counsel that Petitioner's appearance suggested that he might belong to a white supremacist group. (Doc. No. 1 at pg. 12). Petitioner raised this claim on appeal from the Rule 29.15 motion court's judgment, and the Missouri Court of Appeals held:

> We find nothing in the record other than Movant's bald conclusions that the motion court judge displayed bias or prejudice toward him during sentencing. As such, we cannot say had defense counsel filed such a motion, it would have been meritorious. Additionally, trial counsel took steps to remedy any alleged bias by addressing the trial court prior to sentencing to assure the court of Movant's character and to dissuade the trial court Movant was in any way affiliated with a white supremacist group. We also note that Movant's sentence was well within the range allowable pursuant to statute, and the sentence was less than what was recommended by the State; thus, we find no prejudice. Movant's second point is denied.

(State's Exhibits, Doc. No. 11, Ex. F at pg. 6).

As stated above, with respect to federal court review of state court conclusions, 28 U.S.C.

8

§2254 states in relevant part as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254.

The disqualification of a judge is only constitutionally required in "the most extreme of cases." Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 822 (1986). To prove bias, a judge must have a "pecuniary interest in the outcome," or "has been the target of personal abuse or criticism from the party before him." Kinder v. Bowersox, 272 F.3d 532, 540 (8th Cir. 2001), citing Withrow v. Larkin, 421 U.S. 35, 47 (1975). The Eighth Circuit has held in other state habeas claims that other, more serious allegations of bias did not rise to the level of a constitutional defect. For example, it refused to overturn a state court finding that a judge's published remarks disparaging affirmative action and government entitlement programs did not create a racial bias in a case before him. Kinder, 272 F.3d at 54. Similarly, it found that a state court ruling, holding no bias occurred where the trial judge was socializing with the prosecutor at a bar following the trial, was not contrary to federal law or an unreasonable determination in light of the evidence presented. Veal v. Iowa Corr. Inst. for Women, 274 F.3d 479, 481 (8th Cir. 2001) One district court, in a non-habeas action, has ruled on the factual circumstance before the Court. Te-Ta-Ma Truth Found.--Family of URI, Inc. v. World Church of the Creator, 246 F. Supp. 2d 980 (N.D. Ill. 2003). It held that a judge's family member being Jewish does not result in an inference of bias towards a party that is a member of a skinhead group. Id. at 988-89.

9

Accordingly, the Missouri Court of Appeals' opinion did not result in a decision contrary to clearly established federal law and was not based on an unreasonable determination of facts in light of the evidence presented.

Because Petitioner's claim that the judge was biased has no merit, his ineffective assistance of counsel claim has no merit. Under Strickland v. Washington, 466 U.S. 668, 688, 694 (1984), in order to demonstrate ineffective assistance of counsel, Petitioner must show (1) his counsel's performance was deficient, in that his representation fell below an objective standard of reasonableness; and (2) that such deficient performance prejudiced Petitioner, in that there is a reasonable probability that but for counsel's errors the result of the proceeding would have been different. It is objectively reasonable not to make meritless objections. Carter v. Hopkins, 92 F.3d 666, 671 (8th Cir. 1996). Thus, Petitioner's third claim for relief is denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Petition under 28 U.S.C. §2254 for Writ of Habeas Corpus by a Person in State Custody (Doc. No. 1) is **DENIED**, and his claims are **DISMISSED** with prejudice. A separate Order of Dismissal will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. See Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 119 S. Ct. 89 (1998).

Dated this 22nd day of November, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE